## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

EMERALD COAST RESTAURANTS,
INC. D/B/A Q'QUIGLEY'S[1] SEAFOOD
STEAMER & OYSTER SPORTS BAR,

        Plaintiff,                          Case No. _____

      v.

ASPEN SPECIALTY INSURANCE
COMPANY,

        Defendant.
_____ /

### NOTICE OF REMOVAL

      PLEASE TAKE NOTICE that Defendant Aspen Specialty Insurance

Company ("Aspen"), by and through its undersigned counsel, hereby gives notice

that it is removing the above-captioned case in the Circuit Court of the 1st Judicial

Circuit in and for Okaloosa County, Florida, to the United States District Court for

the Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. §§

1332, 1441, and 1446 (the "Notice of Removal").  In support of this Notice of

Removal, Aspen states the following:

---

[1]  The case style in Plaintiff's Complaint filed in Okaloosa County misspelled the
name of Plaintiff as Q'Quigley's, instead of O'Quigley's.

## I.   <u>INTRODUCTION</u>

1.     On September 10, 2020, Plaintiff Emerald Coast Restaurants Inc. d/b/a O'Quigley's Seafood Steamer & Oyster Sports Bar ("Plaintiff") commenced an action against Aspen, *Emerald Coast Restaurants Inc. d/b/a Q'Quigley's Seafood Steamer & Oyster Sports Bar v. Aspen Specialty Insurance Co.*, Case No. 2020 CA 002790 C, in the Circuit Court of the 1st Judicial Circuit in and for Okaloosa County, Florida.

2.     Plaintiff served the summons and a copy of the Complaint on the Chief Financial Officer of Florida (the "CFO") on September 22, 2020, and on September 25, 2020, the CFO served Aspen.  This Notice of Removal is filed on October 22, 2020, which is within 30 days after service on the CFO.  Accordingly, this Notice of Removal is timely filed within the 30 days allowed for removal by 28 U.S.C. § 1446(b)(1).  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355–56 (1999).

3.     In accordance with 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders served upon" Aspen in the state court action are attached hereto as Exhibits 1 through 5.  The process served upon Aspen is attached hereto as Exhibit 2.  The only pleading served upon Aspen (the Complaint) is attached hereto as Exhibit 3.  The only order served upon Aspen (the Agreed Order on Defendant Aspen Specialty Insurance Company's Unopposed Motion for

Enlargement of Time to Respond to Plaintiff's Complaint) is attached hereto as Exhibit 4.  The state court docket sheet is attached hereto as Exhibit 5.  An Index of Exhibits Filed in Support of this Notice of Removal is attached hereto as Exhibit 1.[2]

## II.   THIS COURT HAS DIVERSITY JURISDICTION.

4.      Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United State have original jurisdiction, may be removed by the defendant . . . , to the district court of the United States for the district and division embracing the place where such action is pending."  Under 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

5.      Removal of this action is proper under 28 U.S.C. § 1332 because both the complete diversity of citizenship requirement and the amount in controversy requirement are satisfied.

---

[2]  The Declarations of Anthony Anniello ("Anniello Decl."), William S. Berk ("Berk Decl."), and Ronald L. Kammer  ("Kammer Decl."), are filed contemporaneously herewith and incorporated herein as Exhibits 6, 7, and 8, respectively.

**A.     The Diversity of Citizenship Requirement Is Satisfied.**

6.     Section 1332(a) requires diversity of citizenship, which is established when a civil suit is between citizens of different states.  *Id.* § 1332(a)(1).  Here, complete diversity exists between Plaintiff and Aspen because they are citizens of different states.

7.     As set forth in the Complaint, Aspen is incorporated under the laws of the State of North Dakota and has its principal place of business in New York. (*See* Compl. ¶ 3; Anniello Decl. ¶ 4.)  Therefore, Aspen is a citizen of North Dakota and New York.  *See id.* § 1332(c)(1).

8.     Plaintiff is incorporated under the laws of Florida and, as admitted in the Complaint, has its principal place of business in Florida at 34940 Emerald Coast Parkway #101, Destin, Florida 32541.  (*See* Compl. ¶ 4; Berk Decl. ¶¶ 4–5.) Therefore, Plaintiff is a citizen of Florida.  *See id.* § 1332(c)(1).

**B.     The Amount in Controversy Requirement Is Satisfied.**

9.     As required by 28 U.S.C. § 1332(a), the amount in controversy exceeds $75,000 in sum or value, exclusive of interest and costs, based on Plaintiff's representations that its losses began on March 20, 2020, and that its restaurant's operation was severely impacted, restricted, or otherwise limited as a result of the COVID-19 Orders (defined below); Plaintiff's public adjuster's estimate of its business income losses of $380,590.32; the terms of the Policy

(defined below), which provide up to $1,000,000 in business income with extra expense and business personal property coverages; and Plaintiff's demand for attorneys' fees under FLA. STAT. ANN. § 627.428. *See* 28 U.S.C. § 1446(c)(2).

10.    When a complaint seeks recovery under an insurance policy and damages are not specified in the state court complaint, the removing party must show "by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Roe v. Michelin N. Am. Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal citations and quotation marks omitted).  Importantly, "[a] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pate v. State Farm Mut. Auto. Ins. Co.*, No. 310CV223, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010).  Instead, courts are permitted to make reasonable deductions and inferences, using "their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062.  Likewise, when a complaint seeks declaratory relief, the Eleventh Circuit has held that, for purposes of amount in controversy, the value of declaratory relief is "the value of the object of the litigation measured from the plaintiff's perspective." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315-16 (11th Cir. 2014).  In other words, it is "the monetary value of the benefit

that would flow to the plaintiff if the [relief it is seeking] were granted." *Id.* at 1316.  Again, "absolute certainty is neither attainable nor required." *Id.*

11.     Here, Plaintiff seeks a declaration and judgment against Aspen under a property insurance policy that Aspen issued Plaintiff (the "Policy"), which provides "business income and expense, civil authority, business property, and additional coverages" (Compl. ¶ 9) to Plaintiff's restaurant because, starting on March 20, 2020, the restaurant's "operation was severely impacted, restricted, or otherwise limited" by COVID-19-related government orders.  (Compl. ¶ 13; Anniello Decl. ¶ 8.)  Plaintiff also demands attorneys' fees under FLA. STAT. ANN. § 627.428.  (Compl. ¶¶ 51, 61 (Wherefore Clauses).)  Plaintiff admits at least $30,000, plus attorneys' fees and costs (*see* Compl. ¶ 1), but has not disclosed the amount of losses it is seeking to recover.  Plaintiff's allegations, representations, and the uncontroverted evidence support that Plaintiff is seeking to recover losses exceeding $75,000, exclusive of interest and costs.  This is supported by the Declarations of Anthony Anniello (*see* Ex. 6), William S. Berk (*see* Ex. 7), and Ronald L. Kammer (*see* Ex. 8).

12.     ***First***, Plaintiff's public adjuster estimated that Plaintiff's business income losses were $380,590.32, which demonstrates that the amount in controversy from Plaintiff's perspective well exceeds $75,000.  (Anniello Decl.

¶ 9.)  Federal district courts in Florida routinely find that estimates prepared by public adjusters represent honest assessments of damages by plaintiffs because they reflect specific information and arrive at a specific sum.  *See, e.g.*, *Perez-Malo v. First Liberty Ins. Corp.*, No. 1:17-CV-21180-KMM, 2017 WL 7731958, at *3 (S.D. Fla. June 8, 2017) (collecting cases and holding that public adjuster estimate provided specific information satisfying amount in controversy requirement). Accordingly, the public adjuster's $380,590.32 estimate of business income losses establishes that Plaintiff seeks coverage for losses exceeding $75,000, exclusive of interest and costs, and the amount in controversy requirement is met.

13.     ***Second***, the Policy's Declarations and monthly limit for indemnity for business income with extra expense and business personal property coverages provide further support that the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See, e.g.*, *Pate*, 2010 WL 3372195, at *1 (considering policy limits as informative to amount in controversy in addition to other evidence presented).  The Policy's Declarations indicate a monthly limit for indemnity of one-twelfth of the $500,000 limit of insurance for business income with extra expense coverage and one-twelfth of the $500,000 limit of insurance for business

personal property coverage, such that Plaintiff may recover up to $83,333.34[3] per month at the insured premises.  (*See* Anniello Decl. ¶ 7.)

14.     Plaintiff does business as O'Quigley's and represented that its losses began on March 20, 2020 (Anniello Decl. ¶¶ 5, 8), because of governmental orders issued in response to COVID-19.  (*See, e.g.*, Compl. ¶¶ 10–13.)  Governor DeSantis (the "Governor") issued several orders specifically focused on restaurants, which would include O'Quigley's.

15.     For example, on March 17, 2020, the Governor ordered restaurants to immediately limit their occupancy to 50% of their current building occupancy. (Berk Decl. ¶ 6.)  Then, on March 20, the Governor ordered all restaurants to suspend on-premises food consumption, but permitted restaurants to operate their kitchens for the sole purpose of providing delivery or take-out-services.  (*Id.* ¶ 7.) The Governor also ordered businesses to suspend the sale of alcoholic beverages for consumption on the premises, but permitted them to sell alcoholic beverages in sealed containers for consumption off-premises.  (*Id.*)

16.     Following this order, on March 20, O'Quigley's posted on its Facebook that "the worst possible scenario just occurred" because the Governor "officially closed down all restaurants to dine in food and beverage sales in the

---

[3]  ($500,000 * (1/12) = $41,666.67) + ($500,000 * (1/12) = $41,666.67) = $83,333.34.

state of Florida," so "O'Quigley's is now officially closed until further notice." (*See* Copy of March 20 Facebook Post, attached hereto as Exhibit 9.)  Over one month later, on April 26, O'Quigley's posted on its Facebook that it was open for pick up.  (*See* Copy of April 26 Facebook Post, attached hereto as Exhibit 10.)

17.     On April 29, the Governor issued an order, effective May 4, 2020, which permitted restaurants to allow on-premises consumption of food and beverage, only if they limited their indoor capacity to no more than 25 percent of their building.  (Berk Decl. ¶ 8.)  The Governor also ordered restaurants to keep their bar counts closed to seating.  (*Id.*)  Accordingly, from May 1 to May 4, O'Quigley's posted on its Facebook indicating that it had been open only for take-out and that it would open on May 4 for customers to dine in.  (*See* Copies of May 1–4 Facebook Posts, attached hereto as Exhibits 11–14, respectively.)

18.     On May 14, 2020, the Governor permitted restaurants to serve patrons indoors, only if they limited their indoor capacity to 50 percent of their seating capacity, but still ordered that bar counters were to remain closed to seating.  (Berk Decl. ¶ 9.)  Thus, O'Quigley's posted on its Facebook page that additional areas would be open.  (*See* Copy of May 15 Facebook Post, attached hereto as Exhibit

15.)  Finally, on June 3, 2020, the Governor permitted bar areas to open with seated service.  (Berk Decl. ¶ 10.)[4]

19.     Because Plaintiff has represented that its losses began on March 20 as a result of the COVID-19-related government orders and that it closed for at least one month, Plaintiff's representations establish that Plaintiff's claim, at the very least, amounts to $83,333.34 for one month, without attorneys' fees and expenses. (*See* Anniello Decl. ¶ 7.)  Indeed, Plaintiff's allegations and representations indicate that Plaintiff is seeking damages greater than $83,333.34, due to the limited number of patrons permitted in O'Quigley's, but one month's losses is sufficient to satisfy the amount in controversy requirement.

20.     ***Moreover***, statutory attorneys' fees should be included in determining the amount in controversy.  *See, e.g.*, *Stephens v. Geovera Specialty Ins. Co.*, No. 1:19-CV-327-AW-GRJ, 2020 WL 5845738, at *2 (N.D. Fla. Feb. 10, 2020) (including statutory attorneys' fees in determination of amount in controversy when plaintiff requested fees under Florida statute).  Here, Plaintiff seeks an award of attorneys' fees from Aspen under FLA. STAT. ANN. § 627.428.  (*See* Compl. ¶¶ 51, 61 (Wherefore Clauses).)  A usual and customary rate for an attorney with the

---

[4]  The various orders included in paragraphs 15, 17, and 18 are referred to collectively in this Notice of Removal as the "COVID-19 Orders."

experience of Plaintiff's attorney is between $250 and $275 per hour.  (*See* Kammer Decl. ¶ 10.)

21.     At the time of removal, a reasonable amount of time incurred by Plaintiff's attorney on this matter was between seven and eight hours, resulting in attorneys' fees between $1,875 and $2,350.  (*See id.* ¶¶ 11–12.)  Moreover, one or more attorneys representing Plaintiff will likely spend an additional 25 to 30 hours of work preparing for and defending a motion to dismiss—a likely outcome in this case given the recent outcomes in related COVID-19 business interruption cases—resulting in a total of between $9,375 and $11,350 of reasonable attorneys' fees. (*See id.* ¶ 13.)  If the case were to survive a motion to dismiss and there is substantial discovery, the reasonable amount of attorneys' fees will be much greater.  (*See id*.)  Thus, the attorneys' fees Plaintiff seeks further establish that the value of the amount in controversy exceeds $75,000, exclusive of interest and costs.

### III.    ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED.

22.     In addition to demonstrating that this removal is timely and that diversity jurisdiction exists, Aspen has satisfied all other requirements for removal.

23.     Removal to Proper Court.  As required by 28 U.S.C. § 1441(a), removal to the United States District Court for the Northern District of Florida, Pensacola Division, is proper because this Court is part of the "district and division

embracing the place where" this action was filed.  *See* 28 U.S.C. § 89(a) ("The

Northern District comprises the counties of Alachua, Bay, Calhoun, Dixie,

Escambia, Franklin, Gadsden, Gilchrist, Gulf, Holmes, Jackson, Jefferson,

Lafayette, Leon, Levy, Liberty, Madison, Okaloosa, Santa Rosa, Taylor, Wakulla,

Walton, and Washington."); N.D. Fla. L.R. 3.1(A)(1) ("[T] the Pensacola Division

includes Escambia, Santa Rosa, Okaloosa, and Walton Counties.").

24.     Notice to Parties and State Court.  Pursuant to 28 U.S.C. § 1446(d), in

addition to sending a copy of this Notice of Removal to Plaintiff, Aspen is filing

notice in the Circuit Court of the 1st Judicial Circuit in and for Okaloosa County

and serving upon Plaintiff a separate document titled, "Notice of Filing Notice of

Removal to Federal Court."

## IV.     RELIEF REQUESTED

25.     WHEREFORE, Aspen respectfully requests that this action pending

in the Circuit Court of the 1st Judicial Circuit in and for Okaloosa County, Florida,

be removed to the United States District Court for the Northern District of Florida,

Pensacola Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated:  October 22, 2020                Respectfully Submitted,

/s/  William S. Berk
William S. Berk / FBN: 349828
Alan H. Swindoll / FBN: 119409
**BERK, MERCHANT & SIMS, PLC**
2 Alhambra Plaza, Suite 700
Coral Gables, Florida 33134
Telephone: (786) 338-2900
Facsimile: (786) 338-2888
wberk@berklawfirm.com
mjoseph@berklawfirm.com
aswindoll@berklawfirm.com
nrodriguez@berklawfirm.com

*Local Counsel for Aspen Specialty Insurance Company*

Yvette Ostolaza
Yolanda Garcia
**SIDLEY AUSTIN LLP**
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
yvette.ostolaza@sidley.com
ygarcia@sidley.com

*Counsel for Aspen Specialty Insurance Company*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Notice of Removal was served on the

following counsel of record via e-mail, on October 22, 2020.

Nicholas A. Chiappetta
Florida Bar No: 1006407
MARTEN | CHIAPPETTA
8401 Lake Worth Rd., Suite 130
Lake Worth, FL 33467
Telephone (561) 424-7300
Facsimile (561) 424-7400
service@beheardmc.com
nchiappetta@beheardmc.com

/s/  William S. Berk
William S. Berk

14