# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

EMERALD COAST RESTAURANTS
INC. d/b/a O'QUIGLEY'S SEAFOOD
STEAMER & OYSTER SPORTS BAR,
a Florida profit corporation,

        CASE NO: 3:20-cv-05898-TKW-HTC

       Plaintiff,

v.

ASPEN SPECIALTY INSURANCE
COMPANY,
a foreign profit corporation,

       Defendant.

_____/

## AMENDED COMPLAINT

The Plaintiff, EMERALD COAST RESTAURANTS INC. d/b/a O'QUIGLEY'S SEAFOOD STEAMER & OYSTER SPORTS BAR ("Plaintiff"), sues the Defendant, ASPEN SPECIALTY INSURANCE COMPANY ("Defendant"), and in support the Plaintiff states:

## I.   NATURE OF THE ACTION

1.      This action arises out of the Defendant's failure to provide insurance coverage. The Coronavirus pandemic (COVID-19) and the resulting response by state and local governments have caused physical loss to Plaintiff's property and have

interrupted Plaintiff's business.

2.      For the past few years, the Plaintiff has operated a bar and restaurant in the Destin metropolitan area.

3.      The Plaintiff's operations were suspended and threatened by the novel Coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19.

4.      To protect its business in the event that it had to suddenly suspend operations for reasons outside of its control, prevent further property damage or in the event of a direct loss, the Plaintiff Purchased insurance coverage from the Defendant, which included property coverage, as set forth on the Declarations Page and in the Policy.

5.      The Defendant's coverage forms provide "Business Income" coverage, which promises to pay actual loss due to the necessary suspension of operations caused by or resulting from any Covered Cause of Loss.

6.      The Defendant's coverage forms also provide "Extra Expense" coverage, which promises to pay the necessary expenses incurred to avoid or minimize the suspension of business and to continue operations.

7.      The Defendant's coverage forms also provide "Civil Authority" coverage, which promises to pay for loss caused by action of civil authority that prohibits, among other things, access to the premises.

8.      The Defendant's coverage forms also provide "Extended Business Income" coverage, which promises to pay for actual loss due to the necessary suspension of operations caused by direct physical loss or damage at the described premises.

9.      The Defendant's coverage forms also provide "Ingress and Egress" coverage, which promises to pay for actual loss due to the necessary suspension of operations caused by the prevention of existing ingress or egress at the premises.

10.      The Defendant's coverage forms also provide "Spoilage" coverage, which promises to pay for actual loss to "perishable stock." Under the Policy, Spoilage is a covered loss, which is not otherwise excluded.

11.      The Defendant's coverage form, under section titled "Causes of Loss", define a Covered Cause of Loss as a "direct physical loss unless the loss is excluded or limited in this policy."[1]

12.      Unlike some policies that provide Business Income (also referred to as "business interruption") coverage, Defendant's coverage forms do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases.

---

[1]The term "special" is shown on the Declarations Page for the coverages at issue, which makes this definition operable.

13.     The Plaintiff was forced to suspend or reduce business operations at the insured premises due to COVID-19 and the ensuing orders issued by civil authorities in Florida, mandating the suspension of business, as well as other orders directed at preventing further damage or infection and to minimize the suspension of business and continued operations.

14.     Upon information and belief, the Defendant has, on a wide scale and uniform basis, refused to pay its insureds under its Business Income, Extra Expense, Dependent Property, Civil Authority, Extended Business Income, Ingress and Egress, and Sue and Labor coverages for losses sustained due to COVID-19 and any executive orders by civil authorities that required the necessary suspension of business, and any efforts to prevent further loss to property or to minimize suspension of business and continue operations. In short, the Defendant denied the claims submitted by Plaintiff under the policy.

## II.    **THE PARTIES**

15.     The Plaintiff is a Florida corporation, with its principal place of business in Destin, Florida. The Plaintiff owns and operates a bar and restaurant business located at 34940 Emerald Coast Parkway, Destin, Florida 32541.

16.     The Defendant is, and at all times relevant hereto has been, an insurance company writing insurance policies in the State of Florida. The Defendant is

authorized to do business in the State of Florida, and doing business in Okaloosa County, Florida. The Defendant has engaged in business in Okaloosa County by issuing insurance policies and adjusting claims.

17.     The Defendant is a foreign profit corporation with its principal place of business located at 1709 North 19th St., Suite 3, Bismarck, North Dakota 58501.


## III.   JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C.§1332, because:(a) the Plaintiff and Defendant are citizens of different states, (b) the amount in controversy exceeds $75,000.00 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

19.     Venue is proper in this District under 28 U.S.C §1391, because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of this action is situated in this judicial district.  The policy at issue cover the Plaintiff's premises located in Destin, Florida.

## IV.   FACTUAL BACKGROUND

### The Insurance Policy

20.     In return for the payment of premium, the Defendant issued Policy No. PB7221719 to Plaintiff, for policy period November 15, 2019 through November 15,

2020 (the "Policy"). The Policy included a Building and Personal Property Coverage Form, Commercial Property Extension Form, Business Income (and Extra Expense) form, and Cause of Loss Special Form. The Plaintiff has performed all of its obligations under the Policy, including payment of policy premiums. The Covered Property, with respect to the Building and Personal Property Coverage Form is a bar and restaurant located 34940 Emerald Coast Parkway, Destin, Florida 32541.

21.     The Plaintiff is a Named Insured under the Policy, which remain in full force effect.

22.     The Defendant is the liable insurer of the Policy.

23.     Sometimes property insurance is sold on a specific peril basis, where coverage is limited to risks of loss that are specifically listed (e.g., named peril policies). However, the Defendant's Policy is an "all-risk" property damage policy. These types of polices cover all risk of loss except for risks that are expressly and specifically excluded.

24.     Under the heading "Covered Causes of Loss," the Defendant agreed to pay for "Direct 'loss' unless the 'loss' is excluded or limited" in the policy.

25.     The Defendant did not exclude or limit coverage for losses from viruses in the Plaintiff's Policy. The Policy also did not exclude pandemic coverage, communicable disease coverage or anything similar.

26.    Losses due to COVID-19 are a Covered Cause of Loss under the Defendant's Policy with the Building and Personal Property Coverage Form, Commercial Property Extension Form, Business Income (and Extra Expense) form, and Cause of Loss Special Form.

27.    In the Building and Personal Property Coverage Form, Commercial Property Extension Form, Business Income (and Extra Expense) form, and Cause of Loss Special Form. The Defendant agreed to pay for its insured's actual loss sustained due to the necessary suspension of Plaintiff's operation during the "period of restoration" caused by direct "loss" to property at the covered premises.

28.    "Covered Causes of Loss" is defined as "direct physical loss unless the loss is excluded or limited" in the Policy.

29.    With regards to Spoilage, "Covered Property" is defined as "Perishable Stock at the premises in the Declarations owned by you or by others that is in your care custody and control."

30.    "Perishable Stock" is defined as personal property.

31.    "Business Income" is defined as Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and Continuing normal operating expenses incurred including payroll.

32.    "Operations" is defined as business activities occurring at the described

premises.

33.    "Period of Restoration" is defined as the period of time that begins 72 hours after the time of direct physical loss or damage for Business Income Coverage; or immediately after the time of direct physical loss or damage for Extra Expenses Coverage, caused by or resulting from any Covered Cause of Loss at the described premises.

34.    "Suspension" is defined as "the slowdown or cessation of your business activities...."

35.    The presence of virus or disease can constitute physical loss of or damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in policies, but not others the insurance industry drafting arm-Insurance Services Office, Inc. or ISO - circulated a Statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure(change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated(often temporarily) by such viruses and bacteria, the nature of the property itself  would [have] a bearing on whether there is actual property damage. An allegation of property damage may be a point of

disagreement in a particular case.

36.     The ISO also created a new "amendatory endorsement" to exclude loss

due to virus or bacteria from coverage afforded by certain insurance policies. The ISO

amendatory endorsement states that there is "no coverage for loss or damage caused

by or resulting from any virus, bacterium or other microorganism that induces or is

capable if inducing physical distress, illness or disease" (the "Virus Exclusion").

37.     Some insurers added the Virus Exclusion to their policies that provide

Business Income coverage. The Defendant's Building and Personal Property

Coverage Form, Commercial Property Extension Form, Business Income (and Extra

Expense) Form, and Cause of Loss Special Form, however, do not include, and are

not subject to, any exclusion for losses caused by viruses or communicable diseases.

38.     In the Building and Personal Property Coverage Form and Business

Income (and Extra Expense) form, the Defendant agreed to pay necessary Extra

Expense that its insured sustain during the "period of restoration" that the insured

would not have sustained if there had been no direct physical loss to property caused

by or resulting from a Covered Cause of Loss.

39.     "Extra Expense" includes expenses to avoid or minimize the suspension

of business, continue operations, and to repair or replace the property.

40.    The Defendant also agreed to "pay for the actual loss of "Business Income"" sustained due to the necessary "suspension" of your operations "caused by Covered Cause of Loss."

41.    The Defendant also agreed to "pay for the actual loss of "Business Income"sustained "and necessary Extra Expense" sustained "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property, the civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.

42.    The Defendant also agreed to "pay for the actual loss of "Business Income"sustained "and necessary Extra Expense" incurred during the period that begin on the date the property "is actually repaired, rebuilt or replaced and operations are resumed;" and ends on the earlier of: (a) the date you could restore your operations; or 60 consecutive days. This is referred to as Extended Business Income Coverage.

43.    The Defendant also agreed to "pay for the actual loss of "Business Income"sustained "and necessary Extra Expense" sustained "caused by by the prevention of existing ingress or egress.

44.    The Defendant's coverage forms, under section titled "Duties In The

Event of Loss," require in the event of a loss that the policy holder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property, for consideration in settlement fo the claim. This is commonly referred to as "Sue ands Labor" coverage. In this instance, the Plaintiff was required to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on the insured premises.

45.    The Defendant's Causes of Loss Special Form, section 3., excludes acts or decision, including the failure to act or decide, of any person, group, organization or governmental body [See 3.a.-c. Form CP 10 30 10 12, P. 4 of 10]. However, the ensuing loss provision provides that "if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered cause of Loss, we will pay for the loss or damage caused by that Covered cause of Loss. At a minimum, the government orders, which required Plaintiff to suspend operations indefinitely to reduce the spread of COVID-19 caused perishable food in Plaintiff's care, custody and control to spoil. Spoilage of perishable stock is a covered loss under the Policy. [See form ASPPR174 0418, P. 3 of 6].

46.    Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Dependent Property, Spoilage, Civil Authority, Extended Business Income, Ingress

and Egress, and Sue and Labor provisions of the Policy.

## COVID-19 and the Covered Cause of Loss

47.     Coronavirus (COVID-19) is a highly contagious virus that has rapidly spread and continues to spread across the United States. It is a physical substance, human pathogen and can be present outside the human body in viral fluid particles. According to the CDC, everyone is at risk of getting COVID-19.

48.     COVID-19 is spread by a number of methods, including "community spread," meaning that some people has been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

49.     The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a table, floor, wall, furniture, desk, countertop, touch screen or chair) that has the virus on it, and then touching their own mouth, nose or eyes. COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

50.     More specifically, COVID-19 infections are spread through droplets of different sizes which can be deposited on surfaces or objects.

51.     In addition, The New England Journal of Medicine reported finding that

experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infection during a 3-hour period of observations. An April 2020 study published in the journal Emerging Infectious Diseases found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards. This means there has been a finding of COVID-19 in the air.

52.     COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Missouri.

53.     COVID-19 has been transmitted by human to human contact and interaction with premises in Florida.

54.     COVID-19 has been transmitted by way of human contact with airborne COVID- 19 particles emitted into the air at premises in Florida.

55.     The presence of any COVID-19 particles renders items of physical property unsafe and the premises unsafe.

56.     The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.

57.     The presence of any COVID-19 particles causes direct physical harm, direct physical damage and direct physical loss to property.

58.     The presence of people infected with or carrying COVID-19 particles

renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

59.    The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises unsafe, resulting in direct physical loss to the premises and property.

60.    Plaintiff's insured   premise is likely to have been infected with COVID-19 and have suffered direct physical loss to property. The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020-weeks earlier than previously reported, suggesting that the virus has been circulated globally and in theUnited States far longer than previously assumed. The Plaintiff's restaurant is a tourist destination.Tourists from around the world patron Plaintiff's establishment. Therefore, it is very likely customers, employees, tourists or other visitors to the insured property over the last several months were infected with, or exposed to, COVID-19 and thereby infected or contaminated the insured property with COVID-19.

61.    To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

62.     COVID-19 has been declared a pandemic by the World Health Organization.

63.     The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize hair salons, barber shops, restaurants, bars and other establishments.

64.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs businesses (the "Closure Orders").

## The Florida Closure Orders

65.     On March 01, 2020, Florida Governor Ron Desantis, issued a proclamation declaring a local state of civil emergency, stating that the continued spread of COVID-19 presents an imminent threat of widespread illness and a threat to public health. [See Executive Order 20-51]

66.     On March 09, 2020, Florida Governor Ron Desantis, issued an Executive Order declaring the continued spread of COVID-19 presents an imminent threat to the entire State of Florida. [See Executive Order 20-52].

67.     On March 17, 2020, Florida Governor Ron Desantis, issued an Executive Order, which required the closure of all Florida bars and limited restaurant

to 50% capacity of its buildings occupancy [See Executive Order 20-68].

68.    On March 20, 2020, Florida Governor Ron Desantis, issued an Executive Order, which required the closure of all Florida bars. Restaurants can only provide take out and delivery except for alcoholic beverages [See Executive Order 20-71].

69.    On March 24, 2020, Florida Governor Ron Desantis, issued an Executive Order, which directed state officials to issue a public health advisory and to limit social gatherings [See Executive Order 20-83].

70.    On April 1, 2020, Florida Governor Ron Desantis issued Executive Order 20-91, requiring all persons in Florida to limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities [See Executive Order 20-91].

71.    In total, Florida Governor Ron Desantis has issued approximately fifty-two executive orders related to COVID-19.[2]

72.    The City of Destin declared a State of Emergency in response to COVID-19. The City of Fort Walton Beach declared a State of Emergency in response to COVID-19. The declarations directed all persons to engage in all

_____

[2] Governor's Desantis' Executive orders may be found at: https://www.flgov.com/covid-19-executive-orders/

practices recommended by the Centers for Disease Control, Department of Health and any other health organization to combat the spread of COVID-19. Further, the declaration  encouraged the public accessing public parks, facilities or any other outdoor activity to follow the CDC guidance for social distancing and limiting the number of persons in a gathering to 10 or less. Destin's City Council closed all beaches within the City limits of Destin on Friday, March 20th, 2020. Additionally, the Okaloosa County Board of County Commissioners unanimously voted one March 24, 2020, to close all gulf-front beaches in Okaloosa County.

73.     The Plaintiff's business did not and do not qualify as Essential Businesses and was required to cease or significantly reduce operation at its place of business.

74.     Th Florida Closure Orders were issued in response to the rapid spread of COVID-19 throughout the State of Florida and are civil authority orders requiring the suspension of Plaintiff's business.

75.     As a response to COVID-19 and the Pandemic, the Governor of Florida and  multiple local governments issued these orders pursuant to the authority vested in them by the Florida Constitution, laws of Florida and the ordinances of their respective cities.

76.     Additionally, Florida Governor Ron Desantis issued a "Safer at Home"

order.  That Order severely limited the movements and activities of non-essential businesses or workers.

77.     The State of Florida is a civil authority contemplated by the Defendant's Policy.

78.     The Local municipalities in Florida are considered civil authority contemplated by the Defendant's Policy.

## The Impact of COVID-19 and the Closure Orders

79.     Loss of use of property that has not been physically altered constitutes "physical loss or damage" for purposes of first-party property insurance.

80.     As the drafter of the Policy, if the Defendant had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered or deformed, it could have used explicit langauge stating such a definition, but it did not do so.

81.     The presence of COVID-19 caused direct physical loss of or damage to the covered property or "premises" under the Plaintiff's Policy, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

82.     The Closure Orders prohibited access to and use of Plaintiff's Covered

Property, and the area immediately surrounding damaged property, in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.

83.    The presence of COVID-19 and the Closure Orders caused a direct loss to Plaintiff's dependent property, which resulted in a loss of Business Income sustained.

84.    The presence of COVID-19 and the Closure Orders caused a direct loss to locations contiguous to Plaintiffs' premises, which prevented existing ingress and/or egress at Plaintiffs' premises and caused a loss of Business Income sustained and necessary Extra Expense incurred.

85.    The State of Florida, through the Governor and Department of Health, and the City of Destin, through their mayors, have issued and continue to issue authoritative orders governing Floridians and Florida businesses, including the Plaintiffs' businesses, in response to COVID-19 and the Pandemic, the effect of which have required and continue to require Plaintiff to cease or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the policy.

86.    State and local governmental authorities and public health officials around the United States acknowledge that COVID-19 and the Pandemic cause direct

physical loss and damage to property. For example: (a) The State of Colorado issued a Public Health Order indicating that "COVID-19... physically contributes to property loss, contamination and damage... " (b) The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus physically is causing property loss and damage." (c) ***Broward County, Florida issued an Emergency Order acknowledging that COVID- 19 "is physically causing property damage***." (d) the State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression ... remains a public disaster affecting life, health [and] property." (e) The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to physically impact surfaces and personal property." (f) the City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for a prolonged period of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances." (g) the State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "property." (h) North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives" but also to "assure adequate protection of...property." (i) The City of Los Angeles issued an Order in response to COVID-19

"because, among other reasons, the COVID-19 virus can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time; and G) The City of Kansas City, Missouri issued a Proclamation in response to COVID-19 "to protect life and property."

87.    As a result of the presence of COVID-19 and the Closure Orders, the Plaintiff lost Business Income, incurred Extra Expense and sustained losses due to spoilage of food.

## Plaintiff Submitted Notices of Loss to Defendant and was Wrongfully Denied Coverage

88.    The Plaintiff submitted notice of loss to Defendant under the Policy due to the presence of COVID-19 and the Closure Orders, and the Defendant denied the claim.

89.    On April 22, 2020, the Defendant sent a denial letter to Plaintiff ostensibly denying coverage for the losses sustained as a result of COVID-19 and the Closure Orders.

90.    The Defendant denied coverage based on the assertion that: (i) there was no direct physical loss of or damage to property at the described premise; and (ii)  the government's use of its civil authority to close businesses,

access to the described premises was not prohibited due to direct physical loss or damage to property other than at the described premises. The Defendant failed to mention why food spoilage was not covered under section 3.a.-c. [See 3.a.-c. Form CP 10 30 10 12, P. 4 of 10; *cf.* ASPPR174 0418 Form].

91.    Upon information and belief, the Defendant is using a form denial letter to deny coverage to all its insureds with policies similar to Plaintiff and is otherwise uniformly refusing to pay insureds under its standard policy for losses related to COVID-19.

## V.    <u>LEGAL CLAIMS FOR RELIEF</u>

### <u>COUNT I</u>
### <u>Declaratory Judgment - Business Income Coverage</u>

92.    Plaintiff repeat and reallege Paragraphs 1-91 as if fully set forth herein.

93.    The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

94.    Plaintiff's policy is a contract under which the Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

95.    The Plaintiff has complied with all applicable provisions of the Policy or those provisions have been waived by the Defendant, or the Defendant is estopped

from asserting them, and yet the Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

96.    The Defendant has denied claims related to COVID-19 on a uniform, without investigations.

97.    An actual case or controversy exists regarding Plaintiff's rights and the Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff in connection with suspension of its business stemming from the COVID-19 pandemic.

98.    Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

        a.     Plaintiff Business Income losses incurred in connection with the Closure or Stay at Home Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

        b.     the Defendant is obligated to pay Plaintiff for the full amount of the Business Income losses incurred, and to be incurred, in connection with the Closure Orders during the period of restoration and the necessary interruption of its business

stemming from the COVID-19 pandemic; and

c.     Plaintiff further seek an injunction enjoining Defendant from continuing to engage in conduct in breach of its Policy in regards to coverage decisions under the Business Income coverage form and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT II
## Breach of Contract - Business Income Coverage

99.    Plaintiff repeat and reallege Paragraphs 1-91 as if fully set forth herein.

100.   Plaintiff's Policy is a contract under which the Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

101.   In the Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form, the Defendant agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

102.   A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which the Defendant agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct

loss.

103.   "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

104.   COVID-19 caused direct physical loss of or damage to Plaintiff's Covered Property, requiring suspension of operations at the Covered Property. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff's Policy.

105.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms.

106.   By denying coverage for any Business Income losses incurred by Plaintiff in connection with the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

107.   As a result of Defendant's breach of the Policy, Plaintiff have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## **COUNT III**

## Declaratory Judgment - Extra Expense Coverage

108.   Plaintiff repeat and reallege Paragraphs 1-91 as if fully set forth herein.

109.   The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

110.   Plaintiff's insurance Policy is a contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

111.   Plaintiff has complied with all applicable provisions of the Policy  or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

112.   Defendant has denied claims related to COVID-19 on a uniform basis without investigations.

113.   An actual case or controversy exists regarding Plaintiff's rights and Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

114.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

a.      Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

b.      Defendant is obligated to pay Plaintiff for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of its business stemming from the COVID-19 pandemic; and

c.      Plaintiff further seeks an injunction enjoining Defendant from continuing to engage in conduct in breach of its Policy in regards to coverage decisions under the Extra Expense coverage form and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT IV
## Breach of Contract- Extra Expense Coverage

115.   Plaintiff repeat and reallege Paragraphs 1-91 as if fully set forth herein.

116.   Plaintiff's insurance Policy is a contract under which Defendant was paid

premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

117.   In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

118.   "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

119.   Due to COVID-19 and the Closure Orders, Plaintiff incurred Extra Expense at Covered Property. The Plaintiff has complied with all applicable provisions of the Policy or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms.

120.   By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

121.   As a result of Defendant's breach of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at

trial.

## COUNT V
## Declaratory Judgment - Spoilage Coverage

122.   Plaintiff repeats and reallege Paragraphs 1-91, 131-136 as if fully set forth herein.

123.   The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

124.   Plaintiff's Policy is a  contract under which the Defendant  was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

125.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by the Defendant, or the Defendant is estopped from asserting them, and yet the Defendant  has abrogated its insurance coverage obligations pursuant to the Policy's  ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

126.   The Defendant has denied claims related to COVID-19 on a uniform basis without investigation.

127.   An actual case or controversy exists regarding Plaintiff's rights and the Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of

the losses incurred by Plaintiff in connection with suspension of its business stemming from the COVID-19 pandemic.

128.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

a.   Plaintiff's losses sustained in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

b.   the Defendant is obligated to pay Plaintiff for the full amount of the Spoilage losses incurred and to be incurred in connection with the Closure Orders stemming from the COVID-19 pandemic; and

c.   Plaintiff further seek an injunction enjoining Defendant from continuing to engage in conduct in breach of itsPolicy in regards to coverage decisions under Commercial Property Extension form and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

### COUNT VI
### Breach of Contract - Spoilage Coverage

129.   Plaintiff repeats and reallege Paragraphs 1-91 as if fully set forth herein.

130.   Plaintiff's Policy is a  contract under which the Defendant was paid

premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

131.   In the Commercial Property Extension Form, the Defendant agreed to pay for its insured's loss of "perishable stock" owned by Plaintiff or in its "care, custody or control."

132.   The Policy does not expressly or specifically exclude or limit coverage for spoilage under the factual circumstances of Plaintiff's claim.

133.   In Causes of Loss - Special Form, section B.3. excludes coverage for "acts or decision" "of any ... governmental body." However, section B.3. also provides that "if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

134.   The government Closure Orders, if applicable, directly and proximately caused Plaintiff's perishable food items to expire, rot, or otherwise become unuseable. In Commercial Property Extension Form, Spoilage of food is a covered loss, which is not otherwise excluded or limited under the Policy.

135.   COVID-19 or the Closure Orders caused direct physical loss of or damage to Plaintiff's' Personal Property, which required suspension of operations at the Covered Property. Losses caused by COVID-19, which included spoilage,

triggered the Spoilage provision of Plaintiff's Policy.

136.   Plaintiff complied with all applicable provisions of its Policy or those provisions have been waived by the Defendant, or the Defendant is estopped from asserting them, and yet the Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms.

137.   By denying coverage for any losses incurred by Plaintiff in connection with the COVID-19 pandemic, the Defendant has breached its coverage obligations under the Policy.

138.   As a result of the Defendant's breach of the Policy, Plaintiff sustained substantial damages for which the Defendant is liable, in an amount to be established at trial.

## COUNT VII
## Declaratory Judgment- Civil Authority Coverage

139.   Plaintiff repeats and reallege Paragraphs 1-91 as if fully set forth herein.

140.   The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

141.   Plaintiff's insurance Policy is a  contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

142.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

143.   Defendant has denied claims related to COVID-19 on a uniform basis without investigation..

144.   An actual case or controversy exists regarding Plaintiff's rights and Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of covered Civil Authority losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

145.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

a.     Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under its Policy;

b.     Defendant is obligated to pay Plaintiff the full amount of the Civil Authority losses incurred and to be incurred in connection with the

covered losses related      to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic; and

c.      Plaintiff further seeks an injunction enjoining Defendant from continuing to engage in conduct in breach of its Policy in regards to coverage decisions under the Civil Authority coverage form and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT VIII
## Breach of Contract- Civil Authority Coverage

146.   Plaintiff repeats and real l ege Paragraphs 1-91 as if fully set forth herein.

147.    Plaintiff's insurance Policy is a contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

148.   Defendant agreed to "pay for the actual loss of 'Business Income'" sustained "and necessary Extra Expense" sustained "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property,

and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage."

149.   The Closure Orders triggered the Civil Authority provision under Plaintiff's insurance Policy.

150.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms.

151.   By denying coverage for any business losses incurred and extra expenses sustained by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

152.   As a result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT IX
## Declaratory Judgment - Extended Business Income Coverage

153.   Plaintiff repeats and reallege Paragraphs 1-91 as if fully set forth herein..

154.   The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this

Court to declare the rights and other legal relations of the parties to this dispute.

155.   Plaintiff's insurance Policy is a contract under which the Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

156.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by the Defendant, or the Defendant is estopped from asserting them, and yet the Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

157.   the Defendant has denied claims related to COVID-19 on a uniform basis without investigation.

158.   An actual case or controversy exists regarding Plaintiff's rights and the Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of covered Extended Business Income losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its business stemming from the COVID- 19 pandemic.

159.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

a.   Plaintiff's losses incurred in connection with the Closure Orders and the

necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

b.      The Defendant is obligated to pay Plaintiff the full amount of Extended Business Income losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic; and

c.      Plaintiff further seek an injunction enjoining Defendant from continuing to   engage in conduct in breach of its Policy in regards to coverage decisions under the Extended Business Income coverage form and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT X
## Breach of Contract - Extended Business Income Coverage

160.   Plaintiff repeats and realleg Paragraphs 1-91 as if fully set forth herein.

161.   Plaintiff's insurance Policy is a contract under which the Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

162.   When a Business Income or Extra Expense loss occurs under the Policy,

the Defendant also agreed to "pay for the actual loss of 'Business Income'" sustained "and Extra Expense" incurred during the period that begins on the date that the property is actually repaired, rebuilt or replaced and operations are resumed and ends on the earlier of: a) the date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no loss had occurred; or b) after 60 consecutive days. This is referred to as the Extended Business Income coverage.

163. The Business Income and Extra Expenses losses suffered by Plaintiff triggered the Extended Business Income provision under the Policy.

164. Plaintiff complied with all applicable provisions of the Policy, or those provisions have been waived by the Defendant, or the Defendant is estopped from asserting them, and yet the Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms.

165. By denying coverage for any business losses sustained and extra expenses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, the Defendant has breached its coverage obligations under the Policy.

166. As a result of the Defendant breach of the Policy, Plaintiff sustained substantial damages for which the Defendant is liable, in an amount to be established

at trial.

## COUNT XI
## Declaratory Judgment- Ingress and Egress Coverage

167.   Plaintiff repeats and realleges Paragraphs 1-91 as if fully set forth herein.

168.   The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

169.   Plaintiff's insurance Policy is a contract under which the Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

170.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by the Defendant, or the Defendant is estopped from asserting them, and yet the Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

171.   The Defendant has denied claims related to COVID-19 on a uniform basis without investigation.

172.   An actual case or controversy exists regarding Plaintiff's rights and the Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of covered Ingress and Egress losses incurred by Plaintiff in connection with Closure

Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

173.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

a.   Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured loss under the Policy;

b.   The Defendant is obligated to pay Plaintiff the full amount of the Ingress and Egress losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic; and

c.   Plaintiff further seeks an injunction enjoining Defendant from continuing to engage in conduct in breach of its Policy in regards to coverage decisions under the Ingress and Egress coverage form and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT XII
## Breach of Contract- Ingress and Egress Coverage

174.   Plaintiff repeats and reallege Paragraphs 1-91 as if fully set forth herein.

175.   Plaintiff's insurance Policy is a contract under which the Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

176.    The Defendant  agreed to pay for the actual loss of 'Business Income'" sustained ... and necessary Extra Expense" sustained "caused by the prevention of existing ingress or egress" to the covered premises.

177.   The Closure Orders and the COVID-19 pandemic caused direct loss to locations contiguous to Plaintiffs premises and prevented existing ingress or egress to covered premises and triggered the Ingress and Egress provision under Plaintiffs Policy.

178.   Plaintiff complied with all applicable provisions of the Policy, or those provisions have been waived by  the Defendant, or  the Defendant is estopped from asserting them, and yet   the Defendant has abrogated its  insurance coverage obligations pursuant to the Policy's ambiguous terms.

179.  By denying coverage for any business losses sustained and extra expenses incurred by Plaintiff in connection with the Closure Orders and the

COVID-19 pandemic, the Defendant has breached its coverage obligations under the Policy.

180.   As a result of the Defendant breach of the Policy, Plaintiff sustained substantial damages for which the Defendant is liable, in an amount to be established at trial.

## COUNT XIII
## Declaratory Judgment- Sue and Labor Coverage

181.   Plaintiff repeats and reallege Paragraphs 1-91 as if fully set forth herein.

182.   The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

183.   Plaintiff's insurance Policy is a contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff for reasonably incurred expenses to protect Covered Property.

184.   Plaintiff complied with all applicable provisions of the Policy or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

185.   Defendant has denied claims related to COVID-19 on a uniform basis without investigation.

186.   An actual case or controversy exists regarding Plaintiff's rights and Defendant's obligations under the Policy to reimburse Plaintiff for the full amount Plaintiff reasonably incurred to protect Covered Property from further damage by COVID-19.

187.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

a.   Plaintiff reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under its Policy;

b.   Defendant is obligated to pay Plaintiff for the full amount of the expenses reasonably incurred to protect Covered Property from further damage by COVID-19; and

c.   Plaintiff further seeks an injunction enjoining Defendant from continuing to engage in conduct in breach of its Policy in regards to coverage decisions under the Sue and Labor provision and ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT XIV
## Breach of Contract - Sue and Labor Coverage

188.   Plaintiff repeats and reallege Paragraphs 1-91 as if fully set forth herein.

189.   Plaintiff's insurance Policy is a contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

190.   In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

191.   In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff incurred expenses in connection with reasonable steps to protect Covered Property.

192.   Plaintiff have complied with all applicable provisions of the Policy or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's ambiguous terms.

193.   By denying coverage for any Sue and Labor expenses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic,

Defendant has breached its coverage obligations under the Policy.

194.   As a result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## VI.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.   For a judgment against Defendant for the causes of action alleged against it;

b.   For compensatory damages in an amount to be proven at trial;

c.   For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the policy;

d.   For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the policy;

e.   For pre-judgment and post-judgment interest at the maximum rate permitted by law;

f.   For Plaintiff's attorneys' fees;

g.   For Plaintiff's costs incurred; and

h.   For such other and further relief as the Court deems just and proper.

## VII.   **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all matters so triable as a right.

Dated this _4ᵗʰ_ day of November, 2020.

Respectfully submitted,

/s/Nicholas A. Chiappetta
Nicholas A. Chiappetta, Esq.
Florida Bar No: 1006407
**MARTEN | CHIAPPETTA**
*Attorneys for Plaintiff*
8401 Lake Worth Rd., Suite 130
Lake Worth, FL 33467
Direct: (561) 424-7300
Fax:    (561) 424-7400
service@beheardmc.com
nchiappetta@beheardmc.com